IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JORI L. LUNDGREN,

                OPINION AND ORDER

        Plaintiff,

                18-cv-245-bbc

    v.

KOCOUREK AUTOMOTIVE DEALERSHIPS, INC.,

        Defendant,

and

BALLWEG AUTOMOTIVE, INC.,

        Third Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Jori Lundgren is suing her former employer, defendant Kocourek Automotive Dealerships, Inc., for allegedly subjecting her to a hostile work environment and then terminating her when she complained about discrimination, in violation of Title VII of the Civil Rights Act of 1964. Now before the court is defendant's motion for partial summary judgment with respect to plaintiff's hostile work environment claim. Dkt. #24. I am granting the motion for summary judgment as to the timeliness of certain conduct but denying it on all other grounds because there are disputed issues of material fact that must be resolved by a jury. Fed. R. Civ. P. 56(a).

      From the parties' proposed findings of fact, I find the following facts to be material and undisputed.

UNDISPUTED FACTS

1

A. The Parties, Players and Background

Plaintiff Jori Lundren resides in Rhinelander, Wisconsin and is a former employee of defendant Kocourek Automotive Dealerships, Inc. Defendant is located in Wausau, Wisconsin, where it has several automobile dealerships (Chevrolet, Ford Lincoln, Import, Subaru, Nissan Kia, and J.D. Byrider) that offer new car sales, pre-owned car sales, a parts department and a service department.

Plaintiff started working for defendant in the early 1990s. In 1996, she became an office manager and then the leasing manager before resigning later that year to take a job with a different employer. However, plaintiff stayed in contact with Keith Kocourek, the president of defendant.

In October 2010, plaintiff became defendant's director of training. In that position, she reported to Kocourek and trained all employees who worked with customers, such as salespeople and service advisors. In 2014, plaintiff began reporting to Greg Jensen, who had started working for defendant in September 2010 as the general manager for its Chevrolet dealership. Jensen was given additional responsibilities over the next five years: he became the general manager of the Import dealership in February 2011, the Subaru dealership in July 2012, the Nissan Kia dealership in January 2013 and the ABRA Collision Center in December 2014. In March 2013, Kocourek warned Jensen in a performance evaluation that "I hope we are finished with the drama and poor decisions you have made personally," and "personal issues – disorderly conduct – is it over – will you inform me in the future?" (It is unclear what Kocourek was referring to.) In October 2015, Jensen became defendant's chief

operating officer and oversaw all operations for defendant's Chevrolet, Import, Subaru, Nissan Kia and Ford Lincoln dealerships and the ABRA Collision Center. Jensen has never had any responsibility for defendant's J.D. Byrider dealership.

B. Defendant's Harassment Policy

In 2015 and 2016, defendant had a "Non-Discrimination Policy and Harassment Policy." On August 3, 2015, defendant trained plaintiff on the "law and unlawful harassment, the obligations imposed upon managers and employees of [defendant] and [plaintiff's] responsibility to address any incidents of inappropriate, unprofessional or unlawful conduct."

In 2015 and 2016, plaintiff knew that defendant had a procedure for reporting sexual harassment and that she could make a complaint to a manager or the human resources manager, Corinne Simonson. However, the policy did not require harassment complaints to be filed with Simonson. Defendant has an "open-door policy" by which employees are encouraged to "bring up concerns to a supervisor with whom they feel most comfortable."

C. Alleged Incidents of Sexual Harassment Disputed by Defendant

Plaintiff alleges that she was physically groped and grabbed by Keith Kocourek at his 50th birthday party during a work-related conference in Oshkosh, Wisconsin in July 2012. Plaintiff did not complain about the incident at the time. Kocourek did not sexually harass plaintiff again after this incident.

Plaintiff alleges that Jensen made various sexually offensive comments to her and about other women in her presence:

- Jensen regularly commented about the size of women's breasts and referred to female customers as "hot." (Plaintiff does not recall the dates or details of these incidents.)

- Jensen played a pornographic video depicting anal sex to plaintiff and another employee while the three were socializing at an apartment leased by Kocourek Automotive.

- During a business trip to Florida in late 2010 or early 2011, Jensen and Kocourek made comments about plaintiff's breasts. Jensen also made multiple attempts to touch plaintiff's breasts, prompting plaintiff to nickname him "Captain Hands" and to direct him to "keep [his] damn hands to [himself]."

- Possibly sometime in 2015, Jensen described a female applicant for a service advisor position "as attractive as hell but dumb as a box of rocks" and commented that "since I can't fuck her, it wouldn't make sense to hire her."

- After a meeting in his office on January 19, 2016, Jensen asked plaintiff questions about her sex life.

- At a meeting in January 2016, Jensen made a comment about a waitress at Day's Bowl-a-Dome having nice breasts and stated that the waitress should not have "put her breasts out there" if she did not want them to be noticed. At this same meeting, Jensen told plaintiff that her dress made her breasts look great.

- In the parking lot following a lunch meeting on February 10, 2016, Jensen asked plaintiff whether she was getting lots of sex and stated that he wanted to live vicariously through her.

- During a meeting about plaintiff's annual review on February 23, 2016, Jensen laughingly played with the zipper on his pants and asked plaintiff what she was willing to do for a good review. Jensen had completed most of plaintiff's performance review prior to the meeting. (Plaintiff says that Jensen may have made some notes on the review form before they both signed it.) This review and all of plaintiff's other performance reviews have

been positive.

- At some point, Jensen referred to the breasts of plaintiff's co-worker, Kayla Pitts. Plaintiff did not report the incident but asked human resources manager Simonson to purchase different shirts for Pitts so that they would not be so tight.

- At some point, Jensen informed plaintiff and others in a meeting that the pattern on plaintiff's pant suit hurt his eyes, but after everyone else left the meeting, Jensen stated that he was only joking and thought the pant suit was sexy.

- On three unidentified but separate occasions, Jensen commented on the size of a service manager's buttocks.

In February 2016, Bob Jacobs, an independent consultant for defendant who provided training in the service department, allegedly showed plaintiff an x-ray image of a skeleton's penis. Plaintiff did not report this incident to defendant.

Sales manager Jeff Keller allegedly asked plaintiff to "turn around one more time" or "walk slower", but plaintiff did not report these comments to defendant. (Plaintiff has not identified the date or frequency of these comments.)

(Plaintiff also has proposed several findings of fact, most of which defendant disputes, regarding what she describes as the "culture of sexual harassment" at defendant and "management's interactions with female subordinates." None of these particular incidents involved or were directed at plaintiff. Although it is possible that some of these alleged interactions may be relevant to plaintiff's claims, I have not addressed them in this opinion because plaintiff has not made a persuasive argument for doing so in her response to defendant's motion for summary judgment.)

5

### D. Plaintiff Complains About Sexual Harassment

On March 28, 2016, plaintiff verbally complained to Keith Kocourek about multiple incidents of sexual harassment by Jensen. Plaintiff also told Kocourek during this meeting that she would be uncomfortable with Kocourek as a supervisor because of the 2012 groping incident. (Although defendant attempts to dispute her account, it fails to present any evidence suggesting that plaintiff did not make this statement. Rather, defendant questions plaintiff's credibility by pointing out that plaintiff did not allege further harassment by Kocourek between 2012 and 2016 and that Kocourek continued to supervise plaintiff after the alleged 2012 harassment until 2014.)

Plaintiff did not complain about sexual harassment to anyone else associated with defendant before or after the March complaint. She testified that "you tolerate a lot and just laugh it off and let it go and do your work as long as it did not effect your work." Pltf.'s Dep., dkt. #29 at 86.

On April 3, 2016, Kocourek texted plaintiff to tell her that Simonson would contact her regarding her "resignation." (Plaintiff says that she did not resign and that Kocourek terminated her employment. Defendant denies that this occurred.) Plaintiff filed a complaint of discrimination with the State of Wisconsin Equal Rights Division on July 28, 2016, alleging sexual harassment dating back to 2015. Following an eight-month long investigation, the division issued a probable cause determination on March 27, 2017. Plaintiff requested a right to sue letter and filed her complaint in this court within 90 days of receiving the letter.

OPINION

Defendant contends that plaintiff's hostile work environment must fail, for two reasons: (1) any claim that she was subjected to a hostile work environment prior to October 2, 2015 is untimely; and (2) her allegations do not qualify as the type of severe and pervasive conduct that rises to the level of a hostile work environment. I will discuss each of these arguments below.

A. Timeliness

A plaintiff who wishes to bring a claim under Title VII in federal court must file an administrative complaint with the state's Equal Rights Division within 300 days from the date of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1); Riley v. Elkhart Community School, 829 F.3d 886, 890 (7th Cir. 2016). A plaintiff's failure to file a timely administrative complaint bars her suit. Riley, 493 F.3d at 891; Alexander v. Wisconsin Department of Health & Family Services, 263 F.3d 673, 680 n.1 (7th Cir. 2001).

Defendant argues that plaintiff's allegations concerning the 2012 incident in which Kocourek allegedly groped her and her unspecified allegations that Jensen "regularly" commented about women's bodies are untimely because plaintiff cannot prove that these incidents occurred within 300 days of plaintiff's filing her complaint with the Equal Rights Division on July 28, 2016. As defendant notes, the Court of Appeals for the Seventh Circuit has held that "[w]hen determining whether gaps in the alleged conduct prevent it from

7

forming a single employment practice, we have demanded that plaintiffs provide more than speculative, unspecific assertions." Milligan-Grimstad v. Stanley, 877 F.3d 705, 713 (7th Cir. 2017) (citing Lucas v. Chicago Transit Authority, 367 F.3d 714, 726-727 (7th Cir. 2004)) ("[U]nspecific, speculative allegations [that conduct "probably" occurred during particular time period] cannot connect otherwise distant allegations into a single employment practice."). Plaintiff argues that the 2012 incident is timely under the continuing violation doctrine. However, because she has not responded to defendant's contention that her non-specific allegations are untimely, I will consider the argument waived. Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

In the context of sexual harassment, the Supreme Court has held that incidents of harassment that occurred outside the limitations period can be considered timely if they were part of a series of related incidents that continued into the statutory time period. National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002). See also Heard v. Sheahan, 253 F.3d 316, 319 (7th Cir. 2001) ("A violation is 'continuing,' signifying that a plaintiff can reach back to its beginning even if the beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct."). This rule is based on the view that the claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Morgan, 536 U.S. at 117 (citing 42 U.S.C. § 2000e-5(e)(1)). In other words, because the "unlawful employment practice" is not complete until

the last act of harassment concludes, older incidents may be considered timely because they are part the same "practice" as the newer incidents. Raymond v. CoVantage Credit Union, 2017 WL 3017046, at *3 (W.D. Wis. July 14, 2017).

In this case, plaintiff alleges that she was harassed by Kocourek in 2012. As the parties both recognize, the alleged 2012 incident involved different individuals and different types of conduct (physical touching rather than sexually-charged comments). Although plaintiff generally alleges that this incident set the stage for future harassment by Jensen—who allegedly knew about the 2012 incident—and other employees by condoning a "culture of harassment," there is a three-year gap between this incident and any other alleged harassment. As discussed, plaintiff failed to present specific evidence that other related incidents occurred before 2016. The Court of Appeals for the Seventh Circuit has explained that "[e]ven though the statute of limitations allows plaintiffs 'to drag up ancient history, to the employer's prejudice,' the length of time between incidents has been a consistent limiting factor." Milligan-Grimstad, 877 F.3d at 712 (quoting Pruitt v. City of Chicago, 472 F.3d 925, 927 (7th Cir. 2006)). Accordingly, I agree with defendant that plaintiff's hostile work environment claim is time-barred with respect to the alleged 2012 incident and any non-specific allegations of harassment occurring on unknown dates prior to October 2, 2015.

B. Severe and Pervasive

Title VII of the Civil Rights Act of 1964 prohibits workplace discrimination on the

9

basis of sex. 42 U.S.C. § 2000e-2(a)(1). Discrimination includes "requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). To avoid summary judgment on a hostile-work-environment claim, a plaintiff must adduce sufficient evidence from which a reasonable jury could conclude that: "(1) the work environment must have been both subjectively and objectively offensive; (2) her gender must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must be a basis for employer liability." Orton-Bell v. Indiana, 759 F.3d 768, 773 (7th Cir. 2014) (citing Chaib v. Indiana, 744 F.3d 974, 985 (7th Cir. 2014; Milligan v. Board of Trustees of Southern Illinois University, 686 F.3d 378, 383 (7th Cir. 2012)).

A court evaluating the pervasiveness and severity of conduct examines "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Smith v. Northeastern Illinois University, 388 F.3d 559, 566 (7th Cir. 2004) (quoting Russell v. Board of Trustees of University of Illinois at Chicago, 243 F.3d 336, 343 (7th Cir. 2001)). Consistent with this standard, the court is not to consider separately whether each incident is severe or pervasive. EEOC v. Costco Wholesale Corp., 903 F.3d 618, 626 (7th Cir. 2018) (citing Hall v. City of Chicago, 713 F.3d 325, 331 (7th Cir. 2013)).

As defendant points out, "[t]he occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers would be neither pervasive nor offensive enough to be

actionable." Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 977 (7th Cir. 2004). However, the alleged harassment that occurred in 2015 and 2016 was sexually charged, primarily directed at plaintiff, occurred more than occasionally and could reasonably be considered humiliating. E.g., Orton-Bell, 759 F.3d at 775 (allegations that supervisor regularly ogled plaintiff and forbade her from wearing jeans based on his opinion that "her ass looked so good that it would cause a riot" sufficiently severe, pervasive and offensive). In addition, even though Jensen never gave plaintiff a poor review, a reasonable jury could interpret Jensen's alleged conduct during plaintiff's February 2016 performance review as conditioning plaintiff's continued success and future positive performance reviews on her willingness to provide sexual favors to Jensen or at least, to tolerate continued verbal harassment. Finally, the Court of Appeals for the Seventh Circuit has recognized that harassment by a supervisor is considered more serious. Gates v. Board of Education of the City of Chicago, 916 F.3d 631, 638 (7th Cir. 2019) (discussing critical distinction between co-worker as opposed to supervisor uttering racially offensive language).

Defendant argues that the fact that plaintiff did not report any harassment until March 2016 and her testimony about not letting Jensen's alleged conduct affect her work demonstrates that the harassment was not severe and did not have a negative effect on plaintiff. However, plaintiff also testified that Jensen negatively affected her career. Dkt. #29 at 100. At this stage, evidence is viewed "in the light most favorable to the non-moving party," and the "'court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence.'" Orton-Bell, 759 F.3d at

11

773 (quoting <u>Abdullahi v. City of Madison</u>, 423 F.3d 763, 769, 773 (7th Cir. 2005)). Therefore, it will be up to the jury at trial to decide whether plaintiff's work environment was oppressive and to what extent the alleged harassment interfered with her ability to do her job.

Because I conclude that there are genuine issues of material fact from which a reasonable jury could find that plaintiff was subject to subjectively and objectively offensive and severe or pervasive comments and conduct, I will deny defendant's motion for summary judgment with respect to her hostile work environment claim.

## ORDER

IT IS ORDERED that defendant Kocourek Automotive Dealerships, Inc.'s motion for summary judgment, dkt. #24, is GRANTED IN PART and DENIED IN PART. It is GRANTED to the extent that plaintiff Jori Lundgren's hostile work environment claim is time-barred with respect to Keith Kocourek's alleged harassment of plaintiff in 2012 and any non-specific allegations of harassment occurring on unknown dates prior to October 2, 2015. The motion is DENIED in all other respects.

Entered this 18th day of June, 2019.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge